142 SUFFOLK.

Boston and Worcester Railroad *v.* Old Colony and Fall River Railroad.

## BOSTON AND WORCESTER RAILROAD CORPORATION *vs.* OLD COLONY AND FALL RIVER RAILROAD CORPORATION.

The opinion of an expert is incompetent as to the value of the reversion of land over which a railroad has been located.

In a petition for the assessment of damages caused by the location of a railroad upon a wharf used for the wood and lumber business, and the land connected therewith, one who has been engaged in the lumber business for several years on a wharf in the vicinity, and who has also been connected for many years with railroads, but who has not had any peculiar means of knowledge as to the effect of constructing railroads over wharves similar to that of the petitioners, is not thereby qualified to give an opinion as an expert as to the effect of the location on the value of the petitioners' wharf for that business; nor is one qualified to give an opinion as an expert as to the value of the reversion of land over which a railroad has been located, who has given time and attention to the consideration of the value of land subject to easements of different kinds, including that of land taken for streets and similar purposes, but not for railroads.

*It seems,* that in such case, a bill of exceptions which shows that evidence was admitted of sales of upland at a considerable distance from the wharf in question, four months before the time of making the location, and of the prices paid therefor, and also that evidence was admitted of the number of engines and trains which passed over the land taken during four days near the time of the trial, and of the number of vessels and amount of lumber, wood, coal and plaster coming to the petitioners' wharf, does not disclose sufficient reasons for setting aside a verdict for the petitioners.

PETITION for a jury to assess the damages sustained by reason of the location of a railroad upon the wharves and land of the petitioners, on South Cove, in Boston. The circumstances

under which the location was made are stated in the opinion given at the former hearing of this case, in 12 Cush. 605.

At the second trial in the superior court, before *Vose*, J., in order to show the value, at the time of the location, on the 31st of December, 1847, of the land taken, and of the residue, which were formerly part of the lands of the South Cove Company, "the petitioners introduced evidence of sales by Josiah Quincy, Jr., of upland on the South Cove, at a considerable distance from the wharves in question, in August 1847, and of the prices paid therefor; and also a witness, John Howe, who stated his opinion as to the effect of the location on the value of these wharves for the wood and lumber business, for which, upon the evidence, the wharves in this vicinity were chiefly used, whose qualifications as an expert consisted in having been engaged in the lumber business for fifteen years till 1840, on a wharf in Sea Street; and he had been connected with railroads since 1841, and had been president of the Eastern and Boston and Maine Railroads. To all this evidence of the petitioners the respondents objected — the objection to the evidence of Mr. Howe being that he was not an expert; but the same was admitted."

" The petitioners also examined witnesses to show the interruption and inconvenience incurred by them in the prosecution of their business at said wharves, caused by the respondents' use of the land taken."

" The petitioners also, for the same purpose, introduced evidence of the number of respondents' engines and trains which passed over the land taken during four days in January 1860; and also the following evidence of the kind and amount of business done by the petitioners at said wharves, namely : that two hundred and fifty to three hundred vessels *per annum* come to the Railroad and Clark's wharves; 30,000 to 50,000 tons *per annum* of lumber, wood, coal and plaster; to all which the respondents objected, but the same was admitted. The court instructed the jury, both when the evidence was admitted and in the charge, that the petitioners could not recover any damages to their business caused by the location; and that, so far

as this species of evidence was concerned, the jury were to con-
sider the results which had developed themselves in the use of
the wharves by the petitioners, as throwing light upon the effect
produced by the location upon the petitioners' property in ques-
tion."

" The respondents called Thomas C. Amory, Jr., counsellor
at law, alderman of the city of Boston, and a member of the
committee on laying out and widening streets, who testified
that he had given much time and attention to the consideration
of the value of land subject to easements of different kinds,
including that of land taken for streets and similar purposes,
but not for railroads; that in the course of his official duty he
had frequent occasion to estimate such values for the purpose
of adjusting amounts to be paid to owners of land so taken for
streets, and that he considered himself competent to give an
opinion as to the value of the reversion of land, subject to such
an easement as that acquired by the location of a railroad ; but
the court, upon the objection of the petitioners, refused to allow
him to express an opinion upon such value."

The jury returned a verdict for the petitioners, with $41,501.95,
damages ; and the respondents alleged exceptions.

*S. Bartlett & W. S. Dexter*, for the respondents, cited, as to
the evidence of Quincy, *White* v. *Fitchburg Railroad*, 4 Cush.
440 ; *Davis* v. *Charles River Railroad*, 11 Cush. 506 ; *Wyman* v.
*Lexington & West Cambridge Railroad*, 13 Met. 316 ; *Standish*
v. *Washburn*, 21 Pick. 237 ; *Somerville & Eastern Railroad* v.
*Doughty*, 2 Zabr. 504 ; as to the evidence of Howe, *Buffum* v.
*New York & Boston Railroad*, 4 R. I. 221 ; as to the evidence
of the interruption and amount of the petitioners' business,
*Parks* v. *Boston*, 15 Pick. 208 ; *Brooks* v. *Boston*, 19 Pick. 178 ;
*Meacham* v. *Fitchburg Railroad*, 4 Cush. 299 ; *Dickenson* v.
*Fitchburg*, 13 Gray, 558 ; *Dwight* v. *County Commissioners*,
11 Cush. 201 ; *Hampton* v. *Coffin*, 4 N. H. 517 ; as to the rejec-
tion of the evidence of Amory, *Keith* v. *Lothrop*, 10 Cush. 457 ;
*Webber* v. *Eastern Railroad*, 2 Met. 151 ; *Vandine* v. *Burpee*,
13 Met. 288.

*B. F. Thomas & G. S. Hale*, for the petitioners, cited, in

addition to some of the cases cited by the respondents, as to the evidence of Quincy, *White* v. *Concord Railroad*, 10 Fost. (N. H.) 188; *Whipple* v. *Walpole*, 10 N. H. 131; *Hoitt* v. *Moulton*, 1 Fost. (N. H.) 586; *Barbour* v. *Nichols*, 3 R. I. 187; *Abbott* v. *Wyse*, 15 Conn. 254; *Gregory* v. *McDowel*, 8 Wend. 435; *Kugler* v. *Wiseman*, 20 Ohio, 361; *Eaton* v. *Mellus*, 7 Gray, 566 · *Russell* v. *Horn Pond Railroad*, 4 Gray, 607; *Palmer Co.* v *Ferrill*, 17 Pick. 58; *Smith* v. *Griffith*, 3 Hill, (N. Y.) 333; as to the evidence of Howe, *Marshall* v. *Columbian Ins. Co.* 7 Fost. (N. H.) 157; *Carter* v. *Boehm*, 1 Smith's Lead. Cas. 270, 286, a; *Lincoln* v. *Barre*, 5 Cush. 590; *Buffum* v. *Harris*, 5 R. I. 243; *Robertson* v. *Stark*, 15 N. H. 109; *Davis* v. *Mason*, 4 Pick. 156; *Haskins* v. *Hamilton Ins. Co.* 5 Gray, 432; *Hammond* v. *Woodman*, 41 Maine, 177; 1 Greenl. Ev. § 440; Worcester's Dictionary, Expert; Bouvier's Law Dict. Expert; as to the evidence of the interruption and amount of the petitioners' business, Redfield on Railways, 152; *Concord Railroad* v. *Greely*, 3 Fost. (N. H.) 237; *Dearborn* v. *Boston, Concord & Montreal Railroad*, 4 Fost. (N. H.) 179; *Commonwealth* v. *Sessions of Norfolk*, 5 Mass. 435; *First Parish in Woburn* v. *Middlesex*, 7 Gray, 106.

BIGELOW, C. J. The exceptions in this case are all founded on rulings of the court relating to the competency of evidence offered at the trial. In deciding upon them, it is to be borne in mind, that it is the duty of the party alleging exceptions to show that some error has been committed in matter of law by which he is aggrieved; and that, if it is left doubtful on the statement of the case in the exceptions whether any erroneous ruling to his prejudice has been made, it is the duty of this court to presume that the decision of the court below was correct.

1. The testimony of Mr. Quincy concerning sales of land on the South Cove in the year 1847 is certainly open to question, as being irrelevant and immaterial to the issue. It is difficult to see how the value of upland situated at a considerable distance from the premises in controversy could have had any legitimate bearing as tending to prove the value of the wharf property, which the jury were to estimate in making up their

verdict. There can be no doubt that evidence of sales of land in the vicinity of that belonging to the plaintiffs, especially if devoted to similar uses, would have been competent. *Davis* v. *Charles River Railroad,* 11 Cush. 506. *Wyman* v. *Lexington & West Cambridge Railroad,* 13 Met. 316. It is the apparent dissimilarity of the property and of the uses to which it was appropriated, as well as its distance from that which was the subject of the present controversy, which renders the admissibility of the evidence questionable. But on looking at the statement in the exceptions, relating to the introduction of this evidence, it appears to us that sufficient facts are not set forth to make it clear that the evidence was erroneously admitted. Without intending to say that it was competent, we are of opinion that it does not distinctly appear to have been so irrelevant as to warrant us in deciding that its admission is a good cause for setting aside this verdict.

2. The same remark is true of the evidence which was admitted concerning the kind and amount of business done by the plaintiffs at their wharves. In one point of view this testimony was competent. As tending to prove the interruption of business at the plaintiffs' wharves by cutting off frequent and ready access to them by means of the constant passing of trains, it had a direct bearing on the issue before the jury. The nature and extent of the easement claimed by the defendants, and the kind and amount of business transacted on the premises by the plaintiffs, were proper elements for the consideration of the jury, in estimating the damages done to the estate by the maintenance of the railroad over it. Such evidence tended to prove the actual effect of the location of the road upon the value of the property. On the other hand, it was not open to the plaintiffs to offer evidence of the inconvenience and interruption occasioned to their general business as a railroad corporation by the location of the defendants' railroad. This point was determined by this court when the case was before us on a previous bill of exceptions. 12 Cush. 611. On examining the statement of this part of the case, we are not sure that the true distinction was kept clearly in view in the admission of evidence at the

trial, nor that it was fully explained to the jury in the instruc-
tions of the court. But as we are not satisfied that any error
was committed in allowing incompetent evidence to be laid
before the jury or in the misapplication of facts in proof, we are
constrained to say that the defendants fail to sustain this ex-
ception.

3. The testimony of Mr. Amory was clearly incompetent on
two grounds. In the first place, it did not appear that he had
had any such experience as would qualify him to testify as an
expert in relation to the subject matter concerning which his
opinion was asked. He does not say that he had acquired any
actual practical knowledge of the value of real estate subject
to public easements. Nor does it appear that he had ever
known of sales of such property, or that his opinions had ever
been the basis of any adjustment of damages, where property
had been taken for a public use. His ability to speak on the
subject was founded wholly on his own theories and judgment.
His opinion was purely speculative and not practical. He
therefore had no peculiar means of acquiring information in
relation to the subject inquired about, and could give no better
opinion concerning the matter in controversy than any other
person of sound judgment who had made it a matter of thought
and reflection. But, in the next place, we are of opinion that
the inquiry put to the witness was one which, from its nature,
could not be answered by any one as an expert. The value of
the reversion of land over which a railroad is located depends
on the length of time that the public easement over it will con-
tinue. This is the essential element on which the whole inquiry
must turn, and in relation to it there has been no experience on
which any satisfactory opinion can be based.

4. For reasons similar to those already given for the exclusion
of the evidence of Mr. Amory as an expert, we are of opinion
that the testimony of Mr. Howe was incompetent. It does not
appear that he had any peculiar means of knowledge as to the
effect of constructing a railroad over wharves similar to that
owned by the plaintiffs. It is true that the witness had carried
on business as a dealer in lumber on a wharf in the vicinity for

a number of years, and had been concerned in the management of railroads for a long period. But it does not appear that he had ever known of the use or occupation of a wharf by a railroad similar to that which is shown to exist in the present case. He therefore had no practical experience on the subject concerning which his opinion was asked, and could form no better judgment in relation to it than any other intelligent man, or than the members of the jury. The opinion of witnesses on the substance of the issue is always dangerous, and never to be admitted except where the subject is one beyond the knowledge and experience of common men, and in such cases no testimony is to be given except by those who are shown to possess peculiar means of forming an intelligent and well instructed judgment. In the opinion of the court, Mr. Howe did not possess the necessary qualifications to entitle him to testify as an expert, and on this ground the order must be, *Exceptions sustained.*